Attorney General, Attorney Bar-David, did I pronounce that properly? Yes, you did, Your Honor. Thank you. Good morning, Your Honor. May I reserve five minutes for rebuttal time? Yes, go ahead. Thank you. May it please the Court, my name is Joshua Bar-David, along with Theodore Cox, co-counsel for Mr. Chen. The decision of the DIA reversing the immigration judge's grant of asylum in this case was based upon incomplete analysis and a misperception of the record. Mr. Bar-David, I don't want to interrupt the even flow of your argument, Director, but it would be helpful to me if I knew for sure, what I think must be the case, that you have abandoned any claim under the Convention Against Torture.  So all we have is an asylum case. Yes, Your Honor, that is correct. Based on our case exclusively on political asylum and non-convention against torture. Right. The immigration judge made very specific findings, in fact, as to why the incidents in question rose to the level of persecution, that is to say that Mr. Chen suffered from extreme economic deprivation. The immigration judge specifically addressed the concerns of the Homeland Security that were raised during the hearing, yet the decision of the Board, which is extremely diverse, basically six sentences addressing this issue, in no way analyzed these issues that were addressed by the immigration judge. Specifically, the Board found that Mr. Chen was able to pay off the fines that were imposed. Now the fine that was imposed totaled about 21,000 RMB, which is about 8,000, I'm sorry, about 1,200 U.S. dollars. Mr. Chen was earning about one-third of the total fines per year, so it's over 20 years of his total annual earnings that he was fined. I want to make sure that we agree on the facts at least. Maybe my calculation was wrong, but my calculation was that 21,000 RMB is worth about 3,000 U.S. dollars. That's correct, your Honor. Yes, it's about an 8 to 1 ratio. Okay. Yes, that's correct. I'm sorry. Whereas Mr. Chen's earning, he said, about 800 RMB per month, which works out to about slightly over 20 years of his annual salary. Do we have any idea whether the exchange rate that's given, the one that you and Judge Hardiman just referred to, was the prevailing exchange rate or anything close to it in the late 1990s and 2001 when these fines were imposed? It's not in the record. However, I did research this issue, and it is the same because the RMB is pegged to the U.S. dollar or was pegged at the time to the U.S. dollar, so the exchange rate hasn't changed from now until the late 1990s when these events occurred and currently. But that is not part of the record. That exchange rate is fixed by law as opposed, for example, we have an exchange rate of the euro, but the market sets that and it changes every day. Correct, your Honor. One thing you said was ambiguous to me. Are you abandoning, you made it clear on the convention against torture, are you also abandoning, which is harder to get, of course, the withholding of removal argument than you just once said? Because that's mandatory if you can get it. Yes, your Honor. But meaning that there's no discretionary. I've spoken about abandoning withholding of removal. It was addressed both before the board as well as in this court. But in reality, it's largely irrelevant because there has been no negative discretionary determination with respect to Mr. Chang. He has no criminal history and no indication that he would be ineligible for asylum. Given that the legal standards, it's just merely a higher burden of proof for withholding or removal. If he meets the burden for asylum, he would have no need for withholding or removal. If he could meet the burden for withholding or removal, he would also have met the burden for asylum. So it's really an irrelevant point. But nevertheless, we aren't abandoning that issue. Now, with respect to the fines, the immigration judge, on page 56 and 57 of the record, specifically noted that Mr. Chang was not able to pay off the fines as he testified to until he came to the United States. That is, that he borrowed money while in China from some friends to put a down payment on the fines, that he put a down payment of about 11,000 RMB, but he was unable to pay off the remaining balance. I would undertake to suppose that Mr. Chang did pay, what is the wonderful phrase, the snakehead, $50,000. Did that by borrowing more money from friends and family? Does the record tell us anything about that? It's not exactly clear as to how much he paid the snakehead upfront. He does say that he borrowed some more money from friends and family. The immigration judge, again, addresses this issue, noting that, as Mr. Chang testified to, this was in terms of the snakehead was an investment in his future, that his earning power was substantially higher in the United States, and he would be able to pay off his friends and family by coming to the United States and pay off the snakehead, the $50,000 balance of the amount. The snakehead paid in dollars? The amount quoted, $50,000, was in dollars. It's not clear from the record whether or not he paid physically in dollars or he used RMB, whether they had an exchange rate. From my knowledge of how the smuggling world works, it's generally paid in actual dollars. But again, that's not clear in the record. But it's not that a question of whether or not the Board of Immigration Appeals decision was reasonable to consider the fact that he paid a smuggler, but the world was required to provide an analysis, provide an explanation as to Mr. Chang's explanation that he was able to pay off the smuggler when working in the United States, and he was able to pay off the fines while working in the United States, and he was able to pay for his children's housing, his wife's housing, and his children's medical care, and his children's education, which he was denied free benefits in China in accordance with the Watch Out Family Funding Policy. Can I ask you about that? You say he was denied educational and medical benefits, but it wasn't clear to me from the record that he had those benefits before the violation of the family limit regulation. He wasn't a government employee who got such benefits as a matter of course. Is that right? That's actually not correct, Your Honor. According to the State Department Profile of Asylum Claims and Country Conditions for 2007, and it's contained in the record, I believe, page starts at 911 and goes to 930, they specifically discuss the fact that children registered in the household registry are entitled to free medical care and free education. Children who exceed the birth planning regulations often are not permitted into the household registration system, and therefore the parents have to pay out of pocket. Now, Mr. Chang doesn't specifically address whether or not these children were attempted to be registered in the household registry or the background of it, but he does say that they were unable to get free medical care and education, which is consistent with the U.S. Department of State's Profile of Asylum Claims and Country Conditions. Even if we were to agree with you that Mr. Chetton's fine constituted past persecution, why is there not substantial evidence in the record to support the BIA's decision in so much as the fine has been completely wiped out, so upon his return to China there's no ongoing financial disability? Because the BIA's legal analysis would be inherently flawed and it would require remand. That is to say that once a person demonstrates past persecution under INA 1158, I'm sorry, 8 U.S.A. 1158, they are presumed to have a well-founded fear absent a showing by DHS. The burden has shifted to DHS to show changed country conditions such that the fear is no longer well-founded. It is also well established that changed personal circumstances do not constitute changed country conditions. The worst finding in this regard with respect to Mr. Chen's fear of future persecution, first of all is only analyzing it independently that it is his burden to demonstrate a well-founded fear. They're not analyzing it as presuming that he has demonstrated past persecution, whether DHS has met its burden to rebut the presumption by Sean of changed country conditions. What relief do you want? Do you want us to remand the matter to the BIA for more explanation?  So you're not seeking an outright direction that the asylum be granted? No, Your Honor. While we believe that it has met its standard, the flaw below is not that we're not asking this court to balance the evidence. Our argument is that the board failed to do so and it is the board's job to do so in the first instance. The board did not take into consideration, in fact, it misrepresents the record in saying that Mr. Chen was able to pay off his fines without acknowledging as the IJ specifically in great detail explained, he was only able to do so upon coming to the United States and pay off the fines and Mr. Chen's burden. Well, that doesn't change the fact he paid the fines. It just provides a reason why or how he was able to pay the fines. There's no dispute the fines have been paid. That's correct except it is relevant with respect to Mr. Chen's ability to pay while in China and it left him in his own words crippled and unable to provide for my family. And he had to flee to the United States in order to be able to pay off those fines as the IJ analyzed and explained this was essentially an investment in his future because he was unable to as a result of these fines to continue to live and provide the basic necessities. None of these facts were considered or even acknowledged by the BIA and it's their job to do so in the first instance. But does that mean that every time, we get a lot of cases out of China certainly, does that mean that every time someone receives a fine for violating the family planning policy, if they choose to make an investment in their future to go to our country or any other country so they can make money, that would seem to be a rationale they could try to take advantage of in every instance where a fine is levied. I guess what I'm asking is, is there a policy risk here that perhaps the BIA was attuned to? Because these fines are legion. I mean, we get case after case after case where when you have the second and third child, they get fined. I would respectfully assert that one that this was considered by the board and they have already indicated that it's a case-by-case analysis. And so there is no risk that the board in matter of TZ, which is the seminal case addressing economic persecution, says that it must be done on an individualized basis, on a case-by-case basis to determine whether or not the fines to constitute mass persecution have to constitute extreme economic deprivation. That was the legal standard set in matter of TZ. In this case, I think you've quite accurately stated the standard. What in this case, other than being deprived of notary services, I mean, I do see that in the record that Chen's wife was deprived of notary services, but what else was there to show the kind of severe economic deprivation that our precedence requires to equal past persecution? Well, I'm certainly going to get to that. But at the outset, it's not that I'm asking this court to conclude that he suffered extreme economic deprivation. I'm asking this court to return to the board because the immigration judge concluded he suffered extreme economic deprivation. And the board, in reversing that decision, provided an incomplete analysis. Under Miami Attorney General 620 F. 3rd 372, this court addressed this exact issue where if the board is reversing a determination of the immigration judge under the legal standard, it's still required to consider the evidence and the findings of the judge and explain why the record taken as a whole warrants a different conclusion than the one reached. The board did not consider the findings of the immigration judge. The immigration judge essentially reached its own findings and omitted several of the issues raised by the immigration judge. My only question is, do you question that if we looked at the record, that we could find substantial evidence to support the conclusion that was reached? Now, I know that's a different question than whether the board properly stated its findings. I would say that it is possible that reasonable minds could look at the evidence presented and reach two different conclusions based upon the evidence. As this court has said, where two reasonable conclusions can be reached for the evidence that cannot be determined to be clearly erroneous. Well, how can we possibly then in the long run get anywhere here? Because we gave the explanation and the evidence is there, then we lose. Because it would be our position that if the board had considered the record as a whole and considered the issues addressed and actually accurately reflected the testimony, that it would be much more inclined to correct our application. So you think if they reconsider it, they may come. It's not just a question of explanation. They might come to a different outcome. I would say that you cannot accurately predict that the board would have reached the same conclusion. I just have a technical matter. I noticed the attorney for the petition was Theodore Cox. Are you an associate, Mr. Cox? I'm a periodist co-counsel in this matter. I don't work for this firm, but I'm a periodist co-counsel on our arguments. All right. Mr. Ben David, we'll hear you on rebuttal. Thank you, Your Honor. Mr. Zaglin. Did I pronounce that correctly? That's correct. All right. Good morning, Your Honor. May it please the Court. Ben Zaglin on behalf of the Attorney General. Substantial record evidence supports the board's determination that the fines imposed upon Mr. Chen did not reach the severe level of economic persecution. This Court has held that in order to demonstrate economic persecution, it must be shown that there was a deliberate imposition of economic disadvantage threatening one's life or freedom. That is, one must be subjected to severe economic harm which has a devastating impact. Here, while acknowledging that some of the fines were onerous, the board reasonably concluded that Mr. Chen did not suffer extreme economic deprivation. The government doesn't question that this was a deliberate imposition of substantial onerous economic disadvantage. The issue of deliberation on the part of the government is not in the case. Is that right? That's correct. The fines were deliberate, but it didn't reach the level of deprivation. And I think that's the board's position. And the board, in looking at this case's two major presidential decisions on this matter, which is Dilee and Chen, this Court looked at a number of factors. And it was more than just fines. Here, the issue we had is fines. And then perhaps the issue that maybe some benefits were taken away. But we don't know if that was because of a government fine or because they had more children in violation of family planning policies, as Counselor mentioned. But in Lee, what this Court looked at was that there was an impoverished family. We have no evidence here that Mr. Chen's family was impoverished. In Lee, the family, both husband and wife, were blacklisted from all employment. They were unable to work or provide any income to their family. Here, Mr. Chen is still able to work. And his own affidavit stated that using his salary while he did have to borrow money to pay off some of the loans, he was still able to have some savings while he was living in China outside of the loans. Again, excuse me, Mrs. Eiland, you can clear up something I found a little puzzling. Lee, of course, talks about blacklisting with respect to employment. It was unclear to me, maybe the record shows it, but I don't know where, whether blacklisting was a description of ineligibility for further government employment or broadly no employment at all in China. But the record doesn't demonstrate that, does it? I mean, the record in Lee doesn't tell us exactly what was intended there. Well, in Lee, what we know is that he was blacklisted from government employment and was unable to find any sort of substantially similar work. I think he was looking for eight months or so and was unable to come up with any comparable work or any work at all. And his wife, who was also a nurse, was unable to continue in her employment. You know what I've always wondered? I could never understand why the government doesn't take the position that if somebody hires a snakehead, they're participating in crimes against American law, and for this reason, they ought not to be given asylum in the United States. In other words, they're dealing with vicious criminals. And, you know, I've often wondered, why should people who deal with vicious criminals be let in? Because if they didn't let them in, then the vicious criminals would be out of business. It's almost as if the Department of Justice is tolerating and encouraging this. I just never understood that. It's too bad you're dealing with a snakehead. Get out. Well, today Congress has not passed any laws barring one from making it a criminal activity for one to use the services of a snakehead. And specifically, if there were any laws, the board, in this case, didn't rely on that. The board focusing on the snakehead was saying. You're claiming that $3,000 was so onerous that you had to come to the United States, but you were then able to find an amount 15 times greater than that, $50,000 to pay a snakehead to come to the United States. I think that's where the board's main focus is. If you're claiming that the economic harm imposed upon you is so devastating, then how are you able to come up with an amount so much greater than that to come to the United States? You could have come up with an amount 15 times less than that to pay off the loans in China. And if you look at it through the record, the petitioner states that the loans, the fines which were originally imposed in 1996 and until 1999 when he was still in China, there was another fine paid after. But he was able to pay them in installments. And the Chinese government never harmed him in any way. There was nothing in the record that, for instance, I believe the Chinese government came to their house as a support family, took their furniture and appliances. In Chiang, the family worked on a farm, and the Chinese government came and took the farming equipment and seized the farm. There's nothing in this case that will make the circumstances that Mr. Chiang suffered similar to those. What did the immigration judge hold in Lee? I believe, not specifically, I don't want to guess incorrectly, but I believe the immigration judge did not find it an amount of economic persecution. And then the BIA reversed? The BIA would have affirmed that decision. And then Lee reversed? That would be correct, yes. Well, here we've got what seems to be the atypical situation. We have plenty of cases where immigration judges make adverse credibility determinations against petitioners. And typically, those on the ground, if you will, credibility determinations are affirmed. Here, Chiang persuaded the immigration judge. What was so wrong? What does the record tell us about what was so wrong there with the immigration judge that enabled the BIA to reverse those sorts of decisions that we leave in the hands of the trier of fact? Well, I think in this case, and the government's position would be that, of course, and as the immigration judge noted, DHS has the right to appeal a grant of asylum by an immigration judge. And under its authority to appeal, DHS believed, you know, believed the facts. I didn't question your right to appeal. I'm saying what was so wrong about the IJ's credibility finding? I mean, obviously, if he made it to America, he could generate a lot of money. But as I understand the immigration judge's actual finding, that finding was that if Chiang had stayed in China, he would not have been able to raise the money to pay the fine. Well, that was what was offered by petitioner's counsel under that immigration judge. But looking at this under its de novo authority to review legal findings, the board was not convinced. The board didn't find the factual findings incorrect. And there's no dispute between the parties that regarded the board impermissibly fact found. That's not an issue before the court. The sole issue is whether or not under its de novo authority to review legal matters, which includes a finding of past persecution, whether or not the board found that the uncontested facts did not meet that level. And the board here revealed all the facts found differently than the immigration judge. This court, I take it, has de novo authority to review questions of law. Questions of law would be correct. But in this circumstance, it would be slightly different. And both parties agree that this is a finding that one did not establish persecution. It's actually considered a finding of fact in the appellate courts and is reviewed under the substantial evidence standard. Well, we're in a situation, as I understand it, in which everybody has agreed what the factual record is. It's the record established by the immigration judge and not questioned by the BIA. I would have thought that then the question arises, well, the BIA's conclusion, these facts don't add up to economic persecution. That presents a question of law as to what economic persecution is. Respectfully, Your Honor, the Supreme Court and Eli Zacharias have circuited in almost every case looking at past persecution. All other circuits have found that the analysis of whether or not one has established past persecution is reviewed for substantial evidence because it's a factual finding. And that's been consistently held by all circuits and the Supreme Court. There just seems to be a strange incongruity there because you're saying that the BIA gets to look at it de novo and make a legal determination, but we don't get to look at it de novo and make a legal determination. Is that your argument? I don't know whether that's right or not. I just want to see whether that's your argument. Well, looking at the cases of Kaplan and Wong, which this court has decided, and looking at whether or not it should apply a de novo standard of review, whether or not the board erred, it hasn't addressed the issue of past persecution. It's still held that those issues are reviewed de novo by the board because that's a legal finding and then reviewed for substantial evidence by this court. And it would still be the government's position that in that circumstance that the board is conducting a de novo review because the regulations that were promulgated state specifically that in all matters of law, the board reviews de novo. It only reviews matters of fact under the clearly erroneous standard. And if you were to take a look at the preamble, it specifies that matters of the preamble to the regulations that matters of fact really are looking at issues of credibility. And folks in matters of law are looking at did the facts equal persecution. So that would be the government's position on it. So what is the Supreme Court case that tells us that a reviewing court of appeals doesn't have authority to review de novo legal determinations by the BIA? Well, there's not that specific case. I mean, the specific case would be INS versus Elias Zacharias, which states that findings of persecution are reviewed by courts of appeals for substantial evidence. That is whether or not the record compels reversal. If there's no directive, I'd understand from the Supreme Court of the other cases you're referring to because I didn't know it. Maybe I'm wrong. But this court lacks authority to review a discreet issue of law de novo. That is correct, Your Honor. If I may say so. Again, the parties in this case don't address that issue. The parties both in their brief to this court do not allege that the board engaged in impermissible fact-finding under the clearly erroneous standard and state that the substantial evidence rules for review should apply in this case. Mr. Zeitman, permit me to ask about a statement in your brief, the thrust of which I simply failed to get. On page 16 of your brief, it says midway in that big paragraph, these fines, after the parenthesis about the rate of exchange, these fines are not economic persecution because the harm incurred did not threaten Shen's life, freedom, or deprive him of necessities. And then, your brief says, specifically, the record is devoid of any evidence that Shen would be physically harmed or tortured if he failed to pay the imposed fines. I guess I don't understand the thrust of the government's position there. Certainly, the government can't be saying there must be a demonstration of physical harm or torture. That's correct, Your Honor. What the government's position is, is that in looking at economic harm, it has to, you know, the courts have stated that economic harm requires threats to one's life, freedom, or deprive that individual of the basic necessities. And in that sentence, I was just alluding that there were no physical threats of harm to this person. And then, in the next sentence, mentioning that he was, in looking at freedom or basic necessities, he was able to continue his employment throughout his course and throughout his time in China, and was able to provide for his family. So, I mean, that's basically just what I was trying to allude to, that there was no allegations or instances that Mr. Shen's person was physically harmed in any way. But that's not been regarded as a necessary ingredient of economic persecution. That's correct. I mean, sometimes it's stated, was there an effect on the individual's life in terms of, you know, health or any other physical harm. There's nothing else here that would show that Mr. Shen was injured by the government, aside from the fines imposed upon him. Mr. Zander, would you address the same question I asked Mr. Ben-David about if we disagree with the BIA and we find that there was past persecution, must the case be remanded or does the record support the conclusion that since the fine has been completely paid, it stands to reason that there can't be any threat of future persecution? Well, the board addressed both issues and the board said… Why don't you point that out for us, because I think the argument was that the board did not address that alternative holding, if you will, and that a remand would be required. The board basically says, in the second page of its decision, on the top, the first full sentence, it says, according to the respondent, failed to establish past persecution or a well-founded fear of future persecution due to extreme economic deprivation. And the board was stating that petitioner did not meet his burden of establishing past persecution and for not shifting the presumptions, but under the same factors, failed because all the fines have been paid off, there have been no additional fines imposed upon his family since 2001, that he had no well-founded fear of future persecution should he return to China. Well, are you extrapolating that or is that said there? Well, that's been stated in the sentence before, it says, he was able to pay off the fines with loans from friends and family. And the board, by saying that, said that they're self-explanatory, that there are no further fines imposed upon him. So, there's less threat of future persecution than he's not entirely relieved. That would be correct. The court did find past persecution. Once you find past persecution, then there's a presumption that there's a future persecution, but that's being said as well. That might be true, and you can uphold the presumption, but not here, because in this case, he paid off the fines. So, if there was past persecution, it doesn't lead to a presumption that there's going to be future persecution because the cause is removed. Well, I don't imagine what the board is saying. No, I'm not explicitly saying that, but it's saying that no matter what, the petitioner here would not have a well-founded fear of future persecution because all the fines have been paid off and there's no... I always understood that if there was no threat of future persecution, notwithstanding past persecution, then there's no right to assault. That would be correct, Your Honor. It's not like a non-rebuttable presumption that there's going to be future persecution. If there's a finding of no past persecution... No, no, that's a different... A petitioner can try to show, even though he hasn't been persecuted, that he will be if he goes back. But conversely, if the petitioner has been persecuted in the past, it doesn't automatically establish that he will be persecuted in the future, just that there's a presumption that he will be. But the basis for the persecution is a financial one, rather than, say, a religion or something like that that's ongoing. Correct. And there's no evidence before the immigration judge or in the brief that a petitioner would suffer from future harm. So in your sense, this becomes a sort of an easy case because a clear case right now without a ringleader... I would validate the government's position that substantial evidence supports the Board's decision and the record does not compel reversal in this instance. I see my time has more than expired, but if there are any further questions... Thank you, Mr. Zuckerman. Thank you. Mr. Barr, David? First, just to address a couple of the legal issues that were raised during the government's oral arguments with respect to the presumption of a well-founded fear of future persecution. A person who has demonstrated past persecution is presumed to have a well-founded fear of future persecution, which can only be rebutted by DHS demonstrating changed country conditions. Changed personal circumstances, such as paying off the fine, cannot constitute a basis for rebutting the presumption. This issue has come up in instances of women who have been subjected to FGC, FGM, female genital mutilation, or female genital circumcision, where it had been held by the BAA that because the act was a wartime act, that they had already been circumcised, they no longer had a well-founded fear of future persecution. That was subsequently reversed. I'm sorry, I'm not recalling the case siting. St. Walla is the name of the case, but I don't have the case site. I can provide it in a 28-J letter to the court. That finding was reversed because the change in personal circumstances, that is, the person can no longer be persecuted because the persecution is a wartime act, does not constitute a showing of changed country conditions. It is now well established, and the Attorney General confirmed, the Attorney General Holder confirmed, that a woman who has been subjected to FGM, FGC, has a presumed well-founded fear of future persecution, even though they can't be persecuted in the future, because the only way to rebut the presumption is through a showing of changed country conditions. That's a special circumstance. That's a torture of someone's body. Here we're just talking about money. What precedent or authority do you have for the proposition that that ruling in the female general mutilation area would translate into a case like this? Because those cases were decided specifically under the legal definition of a well-founded fear of future persecution. It doesn't make sense. I understand the appeal of a person who's been subjected to sterilization and the sympathy that goes. I can understand that. But what sense does it make to take a presumption that the past persecution, assuming it was that, will continue when it was strictly financial? I mean, is there any case that holds, as you say, that that presumption continues after the change of country conditions where it's financial? I mean, it doesn't make sense to me. I don't believe that there is any specific case addressing this issue, but I also believe it hasn't come up because the presumption is based upon the statute, 8 U.S.C. 1158-82D, that is, a presumption of well-founded fear can only be rebutted by a showing of changed country conditions because persecution can be in the form of economic persecution. But some of the statute says that you cannot show it any other way. That is correct, Your Honor, yes. And what's the citation again? 8 U.S.C. 1158-82D, I believe is the citation. A? A-2-D, as in dog. Wait a second. 8 U.S.C. 1158-82D. The citation, 1158, is the statute dealing with asylum. I believe that the statute that addresses the rebuttal presumption says that, I don't believe, it does say that a person who has demonstrated past persecution shall be presumed to have a well-founded fear of future persecution. The well-founded fear can only be rebutted by the DHS showing that, through showing of changed country conditions. And because of that, the fact that a person is being held on a fine is irrelevant because it is a change in personal circumstances, not a change in country conditions. In fact, the fact of the matter is that asylum is being granted not on the basis of future persecution, but as a practical matter, because of past persecution. That is correct, Your Honor. I don't know, I read D quite differently. I mean, D appears to be the changed circumstances exception that's present in D says an application for asylum of an alien may be considered notwithstanding some paragraphs B and C. And B is the time limit. I mean, what that says is that if country conditions have changed, you can bring in what would otherwise be an untimely petition. I gave you the wrong slide, Your Honor, I'm sorry. That's referring to the time limitations and changed country conditions issue with respect to the requirement that he file within one year, not with respect to the rebuttal presumption. I got them confused on that one. Well, I filed an opinion a few weeks ago in that presidential case, and I think I mentioned this point. I think this issue is raised with me about, well, this isn't a country condition, the circumstances. You're saying that the law is that if there is not a change in country conditions, no matter how favorable the change to you. Now, sterilization is a terrible change to you, but no matter how favorable. But it's not him, though. I mean, if the wife came, she wins under current precedent. Yes, sir. And, you know, unfortunately for Chen, our court held that the spouse of a persecuted Chinese woman can't get derivative asylum. That's correct. So, yeah. You authored it. Yeah, I think I wrote that. It's the way it goes. You never know. Anything else, Mr. Bardavid? We haven't given you the chance to say you'd like to say. I believe that in my opening hour, it's not very adequately addressed to any issues. Can you pull up the correct citation off the top of your head? Submit a 28-J. I'll submit a 28-J. I know it's an 1158. I got them confused because I knew that AT&T dealt with the time limitations. But I know that I will provide that citation, a 28-J. It's easy to deal with those statutes to get things confused. It makes sense to me that the small A came before the big A. That is true. If you could provide that as quickly as you can, and then we'll give the government three ways to respond. If it wishes, need not. The case was well-argued. We'll take it under advisement. Can I just ask Mr. Zedlin whether he disagrees with that statement? Sure, yeah. Why don't you come to the podium? In other words, do you agree that if there's been past persecution, that there's an irrebuttable presumption of future persecution, no matter what happened to the alien, unless there's a change in country conditions? Well, the disagreement with that would just be that if we look at what his claim of persecution is, it would be that there was other resistance. That's his claim for asylum is based on other resistance, with economic persecution being a type of harm. And the change in country conditions would be that he would not have been able to demonstrate that should he, there's been no evidence that country conditions have remained the same, that there's been, where he lives, there's been greater implementation, greater fines imposed upon individuals in similar circumstances or himself. I don't think you described a change in country conditions. Yeah. I'm sorry? I don't think you just described a change in country conditions. It struck me that you described a change in individualized conditions. Well, change in country conditions would be now, well, first is the claimant found past persecution? And then you would have to find whether or not there's a change in country conditions. But it has to be a change looking at that specific individual. So would he go back to China and face further fines? Is the fine policy still being implemented? Or would this specific alien have that risk that he would have such harm imposed upon him? Any more? Thank you. We'll take it over.